This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36297

**JOHN PACHECO,**

Plaintiff/Counterdefendant-Appellant,

and

**TWIN PINES, LLC,**

Plaintiff/Counterdefendant,

v.

**RICHARD AGUILAR,**

Defendant/Counterclaimant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Angie K. Schneider, District Judge**

Fuqua Law & Policy, P.C.
Scott Fuqua
Santa Fe, NM

for Appellant

William N. Griffin
Ruidoso, NM

for Appellee

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Plaintiff/Counterdefendant John Pacheco appeals the district court's judgment concluding he defrauded Defendant/Counterclaimant Richard Aguilar by

misrepresenting the value of a concession trailer exchanged for Aguilar's release of a debt Pacheco owed on a modular coffee kiosk. Pacheco makes numerous arguments on appeal—(1) as a threshold matter, Pacheco contends that we should consider his notice of appeal timely filed; on the merits, Pacheco contends Aguilar's fraud claim fails because (2) Pacheco never took anything of value from Aguilar, (3) Pacheco's representations regarding the trailer's purchase price did not establish evidence of its market value, (4) Aguilar was required to further investigate Pacheco's representations, (5) Aguilar did not establish Pacheco misrepresented the value of the trailer, and (6) Aguilar was required to unwind the agreement once he discovered the misrepresentation. Pacheco makes a final argument on behalf of Plaintiff/Counterdefendant Twin Pines, LLC, arguing the judgment should not have been entered against Twin Pines.[1] Although we conclude the notice of appeal was timely under the circumstances and thus review the merits of this appeal, we find no error and affirm.

## BACKGROUND

### I.     Factual Background

{2}     Aguilar owned and operated a small, modular coffee kiosk in Ruidoso for several years. In February 2012, Aguilar agreed to sell the kiosk to Pacheco. Pacheco agreed to pay a total of $43,000, in the form of an initial down payment, twenty-four monthly payments, and two additional large payments. Pacheco made the down payment and the first three monthly payments. By May 2012, however, he was experiencing financial troubles, which he communicated to Aguilar. In early June 2012 Pacheco sought from Aguilar a reduction of his monthly payment obligation and indicated he might breach their agreement in the absence of a reduction. As an alternative, Pacheco proposed that Aguilar accept a concession trailer in exchange for a release of Pacheco's remaining debt of $36,200.

---

[1] According to the district court's findings after trial, Pacheco is a majority owner of Twin Pines, and Twin Pines owns the real property under the kiosk. Judgment was entered jointly and severally against Pacheco and Twin Pines, but Twin Pines did not appeal the judgment.

After taking notice of the fact that Twin Pines filed for bankruptcy and the underlying district court proceedings were stayed as a result, we requested the parties' positions on whether this appeal should be stayed pursuant to 11 U.S.C. § 362(a) (2018). Pacheco responded that the appeal should not be stayed; Aguilar did not respond. We also gave Twin Pines' bankruptcy counsel the opportunity to state their position, but they did not respond. We have determined that we may proceed with the merits of this appeal, notwithstanding the bankruptcy stay below. Twin Pines is not a party to this appeal, and the stay does not appear to extend to any party on appeal. *See State ex rel. Udall v. Wimberly*, 1994-NMCA-121, ¶ 13, 118 N.M. 627, 884 P.2d 518 ("The automatic stay statute does not control actions brought against non-debtor entities, even where there is a close nexus between those non-debtors and their bankruptcy affiliates. . . . The protection of this stay is personal to the debtor and does not extend to those jointly liable with the debtor." (alteration, internal quotation marks, and citations omitted)).

As for Pacheco's claim made on behalf of Twin Pines—that judgment should not have been entered against Twin Pines—we have no occasion to address this matter in this appeal. *See Speer v. Cimosz*, 1982-NMCA-029, ¶ 9, 97 N.M. 602, 642 P.2d 205 ("[A]lleged error must be personal to the appellant to merit review on appeal."); *see also Yoakum v. W. Cas. & Sur. Co.*, 1965-NMSC-127, ¶ 9, 75 N.M. 529, 407 P.2d 367 ("Plaintiff has not appealed and, as between it and the [co-defendant], the court's judgment is final.").

**{3}**     In support, Pacheco sent Aguilar various images of the trailer, along with an "invoice" appearing to indicate that Pacheco had purchased the trailer in December 2010 for $32,821. Pacheco also provided Aguilar another "invoice" appearing to indicate he paid $10,275 for after-market additions to the trailer. Taken together, the documents indicated that Pacheco had invested a total of $43,096 in the trailer. Based on the documentation provided, Aguilar agreed to excuse Pacheco's remaining payments due on the kiosk in exchange for the trailer, and the parties signed a release agreement in July 2012 ("the release agreement").

**{4}**     Aguilar took possession of the trailer, drove it to Oklahoma City, and attempted to sell it. He advertised the trailer on Craigslist for $39,900, but he received no offers. He ran a three-day advertisement in Oklahoma City's principal newspaper but again he received no offers. He then took the trailer to a large auctioneer, which had previously sold concession trailers and equipment. The auctioneer sold the trailer quickly, and after paying the auctioneer's costs and commission, Aguilar netted $8,726.46 on the sale. About two weeks later, Aguilar filed a UCC-1 financing statement, aiming to preserve an interest in the kiosk given the substantial difference between the sum he received for the trailer and the sum owed by Pacheco at the time of the release agreement.

**{5}**     Aguilar communicated with the companies named on the invoices Pacheco had provided and discovered the invoices had been altered. The original documents, which Aguilar eventually obtained, reflected a total price for the trailer and after-market additions of approximately $14,933—at least $28,000 less than what Pacheco had originally represented.

**{6}**     The district court found Pacheco committed fraud by altering the invoices and using them to induce Aguilar to enter the release agreement. The court added that Aguilar had justifiably relied on the invoices and Pacheco's related representations to his detriment, incurring damages of $27,437.54. The parties' remaining claims were dismissed.

## II.     Procedural Background

**{7}**     Pacheco filed a complaint, alleging breach of contract and various additional causes of action based in part on Aguilar's filing of the UCC-1 financing statement. Aguilar brought a counterclaim of fraud, based on the alterations made to the invoices, along with several other claims. The parties tried the case to the court in January 2016. The district court convened the parties on November 17, 2016, to orally announce its judgment. The court then invited the parties to submit proposed findings of fact and conclusions of law, on a mutually agreeable date. On December 30, 2016, the parties had not yet submitted proposals, and the court entered a judgment including various findings and conclusions and memorializing the decision announced at the November hearing.

**{8}**     On January 23, 2017, Pacheco submitted proposed findings and conclusions, without any accompanying motion to amend or modify the judgment. Aguilar submitted

his own proposed findings and conclusions around the same time. On January 30, 2017, Pacheco moved to extend his deadline for filing a notice of appeal, apparently under the impression that filing a notice of appeal would deprive the district court of jurisdiction to consider the parties' submissions. Aguilar responded to Pacheco's motion, explaining an extension was unnecessary because Pacheco's submission acted as a motion to amend the district court's findings and conclusions under Rule 1-052(D) NMRA, and tolled the deadline to file a notice of appeal. The court nevertheless granted an extension, giving Pacheco an additional thirty days from the original deadline of January 30—through March 2—to file his notice of appeal. By March 2, 2017, the court had not yet acted on the parties' proposed findings and conclusions, and the court granted Pacheco an additional extension, until March 6, to file his notice of appeal. On March 6, 2017, the court entered new findings of fact and conclusions of law. Pacheco filed his notice of appeal the same day.

## DISCUSSION[2]

### I.  Pacheco's Notice of Appeal Was Timely Under the Circumstances

**{9}**  We initially proposed to dismiss Pacheco's appeal on the ground that his notice of appeal was untimely because the district court lacked authority to extend the notice deadline to March 6 in light of Rule 12-201(E)(5) NMRA, which provides that any such extension "shall not exceed thirty (30) days after the date that the notice of appeal would have been due if the extension had not been granted." Pacheco nevertheless asks us to conclude his notice of appeal was timely because his submission of proposed findings and conclusions tolled his deadline until the district court acted on the submission. Alternatively, he contends he was entitled to rely on the district court's extensions of his deadline. Aguilar argues to the contrary but acknowledges Pacheco put the parties and the district court on notice of his intent to appeal and Pacheco's minimal delay in filing a formal notice caused no prejudice. Aguilar offers that Pacheco's notice of appeal "should be allowed in order to best serve justice." We conclude, under the particular circumstances here, Pacheco's submission of proposed findings and conclusions acted as a motion to amend and tolled the deadline to file a notice of appeal.

**{10}**  Determination of whether Pacheco's appeal was timely turns on the interpretation of our court rules, which we review de novo. *Grygorwicz v. Trujillo*, 2009-NMSC-009, ¶ 7, 145 N.M. 650, 203 P.3d 865. We construe our appellate rules liberally so as to address appeals on their merits. *L.D. Miller Constr., Inc. v. Kirschenbaum*, 2017-NMCA-030, ¶ 15, 392 P.3d 194. Rule 12-201(A) NMRA directs that a notice of appeal be filed

2We note that Pacheco has failed to inform this Court whether any of his claimed errors were properly preserved. For every issue raised, Pacheco's brief in chief lacks "a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings, or exhibits relied on." Rule 12-318(A)(4) NMRA. We have in the past declined to consider claims that are not accompanied by an adequate preservation statement. *See Lasen, Inc. v. Tadjikov*, 2020-NMCA-006, ¶¶ 14-19, 456 P.3d 1090. Notwithstanding the absence of a preservation statement, Aguilar has not raised preservation and we have been able to determine from our review of the record that most of Pacheco's claims were raised below. We thus proceed to address the merits.

within thirty days of the filing of a judgment—or, in this case by January 30, 2017, the day Pacheco requested an extension. When a party timely files a motion that has the potential to affect the finality of the judgment, however, Rule 12-201(D)(1) directs that the thirty-day period for filing a notice of appeal shall not begin to run until the court disposes of the motion. A motion to amend made under Rule 1-052(D), which permits a party in a nonjury trial to move for amendment of the district court's findings and conclusions, is within the class of motions under Rule 12-201(D)(1) that tolls the deadline.

**{11}** Pacheco, the parties agree, filed no document captioned as a "motion" and no document asking explicitly for the district court's amendment of facts or conclusions made in its December 30 judgment. Our review of the record, however, reveals that Pacheco's January 23, 2017, submission was in substance, and the parties and the court understood Pacheco's submission as, a motion to amend under Rule 1-052(D), affecting the finality of the judgment. *See, e.g.*, *Phelps Dodge Corp. v. Guerra*, 1978-NMSC-053, ¶ 18, 92 N.M. 47, 582 P.2d 819 ("The manner in which the relief is requested and the nomenclature used is not significant."); *Century Bank v. Hymans*, 1995-NMCA-095, ¶ 10, 120 N.M. 684, 905 P.2d 722 ("The movant need not cite the provision authorizing the motion; the substance of the motion, not its title, controls.").

**{12}** Consequently, Pacheco's time for filing a notice of appeal began to run only on entry of the court's disposition of the motion and entry of new findings and conclusions on March 6, 2017. Pacheco's notice of appeal filed the same day was therefore timely under the circumstances.

## II. Aguilar's Fraud Claim Does Not Fail for Lack of Proof That Pacheco Took Something of Value

**{13}** Generally a claim of fraud based on misrepresentation requires establishment of the following elements: "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness [by] the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." *Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 22, 142 N.M. 209, 164 P.3d 90 (internal quotation marks and citation omitted). The district court found each of the elements established, and Pacheco raises no challenge regarding the sufficiency of the evidence supporting those findings.

**{14}** Pacheco initially contends that a person cannot commit fraud unless he takes something of value from another. Pacheco alleges he never took anything of value from Aguilar because (1) Aguilar did not produce a document, other than the release agreement, transferring ownership of the kiosk; and (2) Aguilar filed a UCC-1 financing statement covering the kiosk, so Aguilar cannot be said to have relinquished any interest in the kiosk. Thus, Pacheco argues Aguilar cannot prevail on his fraud claim as a matter of law.

**{15}**   Pacheco, however, offers no authority for the proposition that fraud requires proof of an additional element—i.e., that the accused must take something of value from another before liability for fraud may attach, and thus we assume no such authority exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). But even were proof of some transfer of value required, Pacheco has not explained why the executed release agreement, coupled with his possession of the kiosk, could not constitute sufficient proof of that transfer, and we decline to develop that argument for him. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what his arguments might be.").

**{16}**   In short, Pacheco's argument that Aguilar's fraud claim must fail as a matter of law absent proof that Pacheco took something of value is without merit.

### III.   Pacheco Made Representations Regarding the Value of the Trailer

**{17}**   Pacheco contends any representations he made regarding the purchase price of the trailer cannot have induced Aguilar's reliance and execution of the release agreement. Pacheco argues that his representations related only to his purchase cost for the trailer, and not the current market value of the trailer, and suggests that only representations of the current value of the trailer could form the basis of a fraud claim.

**{18}**   As with his previous argument, Pacheco has offered no authority for the contention that Aguilar was only entitled to rely on an express representation of current value, and we again assume none exists. *See Curry*, 2014-NMCA-031, ¶ 28. Even if some representation of value distinct from the purchase price was required, however, we note the district court found that Pacheco represented the "trailer had a value in excess of $43,000" and that he provided Aguilar the altered invoices "to represent the value of the concession trailer." Pacheco has not challenged the sufficiency of the evidence supporting these findings. But even if he had, ample evidence supports them. Aguilar testified he asked Pacheco how he could know what the trailer was worth, and Pacheco responded by explaining he had the original manufacturer's invoices, he would send them over, and the trailer was "real new." As a result, Aguilar thought, based on the invoices, that he was receiving a trailer "worth" approximately $43,000. Moreover, Pacheco himself testified that Aguilar had wanted to "make sure my trailer was at the same value of his kiosk," and that the altered invoices were to be understood as showing the trailer's value at the time.

**{19}**   Based on the record, we cannot conclude the district court erred in finding Pacheco made representations regarding the value of the trailer. Aguilar's contentions to the contrary fail.

### IV.   Aguilar Was Not Required to Investigate Pacheco's Misrepresentations

**{20}**     Pacheco contends Aguilar's failure to investigate Pacheco's misrepresentations regarding the value of the trailer bars his fraud claim. Our courts have repeatedly applied the opposite rule. We have explained that a purchaser "has no duty to make inquiries or examination of the misrepresentation, unless he had knowledge of his own or of facts which should arouse suspicion and cast doubt upon the truth of the statement made." *Gaston v. Hartzell*, 1976-NMCA-041, ¶ 11, 89 N.M. 217, 549 P.2d 632; *see also Jones v. Friedman*, 1953-NMSC-051, ¶ 23, 57 N.M. 361, 258 P.2d 1131 ("[T]he party to whom [a misrepresentation of fact] is made has a right to rely on them, he is justified in relying on them, and, in the absence of any knowledge of his own, or of any facts which should arouse suspicion and cast doubt upon the truth of the statements, he is not bound to make inquiries and examination for himself." (internal quotation marks and citation omitted)); *Lotspeich v. Golden Oil Co.*, 1998-NMCA-101, ¶ 17, 125 N.M. 365, 961 P.2d 790 ("Only where a representation is obviously false or where the recipient has reason to know of facts making reliance unreasonable, is he invested with a duty to investigate the truth of statements made to him."); Restatement (Second) of Torts: Duty to Investigate § 540 (Am. Law Inst. 1977) ("The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation."). Pacheco offers no contention that Aguilar had reason to doubt the representations made, and thus we conclude Aguilar had no duty to investigate further. *See Gaston*, 1976-NMCA-041, ¶¶ 12-13 (concluding home purchasers had right to rely on misrepresentation regarding square footage where record revealed no reason to question accuracy).

**{21}**     Citing two cases, Pacheco instead asks us to apply a rule of diligent investigation generally applicable in contract cases. *See Twin Forks Ranch, Inc. v. Brooks*, 1998-NMCA-129, 125 N.M. 674, 964 P.2d 838; *see also Marrujo v. Chavez*, 1967-NMSC-059, 77 N.M. 595, 426 P.2d 199. Neither case, however, involved a misrepresentation. *Twin Forks Ranch, Inc.* examined whether certain water rights had been contemplated in a contract for the sale of land and concluded clear and convincing evidence indicated "that the parties did not discuss or bargain over the appurtenant water rights." 1998-NMCA-129, ¶ 14. *Marrujo* examined whether parties to a contract for the sale of land understood the seller had no title to a portion of the acreage, and concluded there was nothing in the record to support the possibility that the seller knew of the error or failed to advise the purchaser of any error. 1967-NMSC-059, ¶ 8. Here, by contrast, the district court made findings, unchallenged by Pacheco, that Pacheco made misrepresentations regarding the purchase price and value of the trailer.

**{22}**     Given both the record and the absence of an argument for displacing our general rule in misrepresentation cases, Pacheco's cited authority is simply inapposite, and, as stated, we conclude Aguilar had no duty to investigate.

## V.     Aguilar Established Pacheco Misrepresented the Trailer's Actual Value

**{23}**     Pacheco adds a contention that Aguilar "had some obligation to make a genuine attempt to sell the trailer" before he was entitled to claim Pacheco had misrepresented the value, citing *Jones* in support. *Jones* examined a scenario where a purchaser of a

business contended the seller had misrepresented the value of outstanding accounts receivable. *See* 1953-NMSC-051, ¶ 1. The district court made no findings regarding whether the seller had in fact misrepresented the value of the accounts, and after reviewing the record, the Court concluded the purchaser made almost no attempt to establish the value, doing "little more" than "placidly awaiting the arrival of the debtors with money in hand." *Id.* ¶¶ 11, 16. The Court concluded that was not enough to establish the value of the accounts and thus not enough to establish the seller had made any misrepresentation. *See id.*

{24}    *Jones*, however, is of no help to Pacheco for two reasons. First, the district court here made findings regarding the trailer's misrepresented value and the actual value. Our task on review thus is not to make our own determinations, as in *Jones*, but to review the district court's findings for substantial evidence. *See Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 1991-NMSC-097, ¶ 12, 113 N.M. 9, 820 P.2d 1323 (reviewing record for substantial evidence to support the district court's finding of misrepresentation). Pacheco has not challenged any of the district court's findings regarding Aguilar's establishment of the actual value of the trailer, and thus we are bound by them on appeal. *See Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298 ("An unchallenged finding of the [district] court is binding on appeal."); *see also* Rule 12-318(A)(4) (directing that the brief in chief "shall set forth a specific attack on any finding, or the finding shall be deemed conclusive"). Second, Pacheco has offered no authority supporting the argument that Aguilar's efforts to establish a value were legally insufficient. In this case, Aguilar undertook substantially more efforts than in *Jones*—he communicated with the original manufacturers, placed online and newspaper advertisements, and eventually sold the trailer at auction. We have in other contexts concluded a sale at auction may be a commercially reasonable course of action, and Pacheco has offered no authority indicating it may have been unreasonable here. *See, e.g.*, *First Nat'l Bank of Dona Ana Cty. v. Ruttle*, 1989-NMSC-054, ¶ 14, 108 N.M. 687, 778 P.2d 434 (concluding auctioning of farm equipment was reasonable under the circumstances).

{25}    Based on the record and the argument advanced by Pacheco, his contention that Aguilar failed to establish a false representation as to the trailer's actual value is without merit.

## VI.    Aguilar Was Entitled to Retain Possession of the Trailer, Sell It, and Seek Damages

{26}    Pacheco contends Aguilar's decision to retain possession of the trailer, sell it, and then seek damages based on the difference between the sales price and the misrepresented value bars any claim for fraud. Pacheco argues Aguilar's sole remedy upon discovering the misrepresentation, instead, was to return the trailer and retake possession of the kiosk. Pacheco again has offered no authority for this proposition, and we assume none exists. *See Curry*, 2014-NMCA-031, ¶ 28. Contrary to Pacheco's proposition, we note New Mexico has long recognized the rule that a defrauded party may elect a remedy—he may "bring an action to rescind the contract or affirm and sue

for damages." *Everett v. Gilliland*, 1943-NMSC-030, ¶¶ 9-10, 47 N.M. 269, 141 P.2d 326. As a result, Aguilar was under no obligation to attempt to unwind the contract here. Pacheco has offered no argument why Aguilar's election of a remedy was inappropriate, and we will not develop one for him. *See Headley*, 2005-NMCA-045, ¶ 15.

**{27}** We therefore cannot conclude Aguilar's election to affirm and seek damages bars his fraud claim.

**CONCLUSION**

**{28}** We affirm the district court's judgment.

**{29}** **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**